BELFAST & MOOSEHEAD LAKE RAILROAD COMPANY *vs.* GEORGE W. COTTRELL.

Waldo, 1875.—July 11, 1876.

*Railroad.*

The defendant subscribed an agreement to take the amount of shares set against his name in the capital stock of the plaintiff railroad company agreeably to foregoing conditions, one of which was that no assessment except for a preliminary survey and location should be made nor any work upon the road commenced until the full amount was secured for its completion to (or as far as to) Newport. The subscriptions were less in amount than the actual cost; and, if a deduction be made of invalid conditional subscriptions, were much less than the cost estimated by the engineer. *Held,* that the defendant's subscription was invalid.

ON REPORT.

CASE. The count relied upon was as follows :

"For that, at said Belfast, heretofore, to wit : on the first day of August, 1867, the plaintiffs duly organized and authorized and having opened subscription books for the sale of shares of preferred stock of said company, the defendant subscribed in said

books and agreed and bound himself to take two shares of said stock and to pay for the same at the rate of one hundred dollars per share; and the plaintiffs aver, that from time to time calls have been made on said defendant and all other subscribers for shares aforesaid, until the amount of said calls was to the full amount agreed by the defendant to be paid as aforesaid; that the defendant, although requested, utterly neglects to pay the amount due from him under either of said calls, and that their treasurer, by order of their directors, duly notified a sale of said shares for the non-payment of said calls, and duly sold the same at public auction, to the highest bidder therefor, on the second day of·April, inst., for the sum of one hundred and two dollars, being less than the amount due under said calls in the sum of ninety-eight dollars, which said sum of ninety-eight dollars said defendant is by law obliged and bound to pay the plaintiffs," yet, etc.

Plea, never promised; with brief statement..

I. That if he made any promise or promises, they were made upon conditions, which have not been performed by the plaintiffs.

II. That the promise, if any was made, was to take shares and not to pay for them.

III. That the assessments were illegal.

IV. That the railroad, by the terms of the defendant's subscription, by the charter and by the by-laws, was to be built from Belfast to Newport, and that it was not built to Newport, but to Burnham.

V. That the number of shares which composed the capital stock of the railroad corporation was not definitely fixed by the charter, or by the directors or stockholders, before the assessments were made.

VI. That the plaintiffs first broke their contract, if any existed with him.

VII. That the plaintiffs in building the railroad did not comply with the charter, by-laws, or the conditions of the subscription, or with the laws of the state.

The plaintiffs put in the subscription book admitted to have been signed by the defendant, and containing among other things a recital of a meeting of the directors, held July 6, 1867, and of several resolutions passed by them of which the fourth reads thus:

"No assessment whatever, except for a preliminary survey and location of said road, shall be made upon any share or shares, so as above subscribed: nor shall any work upon said road be commenced until the full amount be secured for its completion to Newport, thereby avoiding the necessity of any mortgage or incumbrance being ever contracted by the corporation."

The subscription book closed as follows :

"We the undersigned do hereby agree and bind ourselves to take the amount of shares set against our respective names in the stock of the 'Belfast & Moosehead Lake Railway Company,' agreeably to the foregoing conditions. The shares to be of the preferred stock of said company.

| NAMES. | SHARES. | VALUE. | TOTAL. |
| --- | --- | --- | --- |
| G. W. Cottrell. | 2. | $200. | $200." |

The opinion of the court stating the facts bearing on the single ground of defense upon which the decision was based renders a further statement of the evidence immaterial.

*W. H. McLellan*, for the plaintiffs.

*N. Abbott* and *J. Williamson*, for the defendant.

VIRGIN, J. The count relied on is so defective in several particulars that the plaintiffs cannot recover under it as it now stands ; but inasmuch as the case comes before us on report and the evidence was admitted without objection, the declaration can be amended if necessary ; therefore, we shall consider the case as if the declaration were sufficient.

The plaintiff corporation seeks to recover of a subscriber for two shares of its capital stock, an alleged balance between the net sum realized from a sale thereof, for non-payment of sundry assessments laid thereon, and the amount of such assessments equal in the whole to their original par value.

The defendant's subscription-agreement "to take" the shares of stock imports no promise on his part to pay for them directly. *B. & M. L. R. R.* v. *Moore*, 60 Maine, 561. If the agreement had been absolute, its utmost effect could only constitute him a stockholder—owner of so many shares, entitling him to the rights, and

rendering him liable to the obligations imposed by law upon a stockholder. His subscription was to take the stock "agreeably to the conditions" therein expressed : one of which was "no assessment whatever, . . . shall be made upon any shares so as above subscribed, . . . until the full amount be secured for its completion to Newport." This is a condition precedent; and hence before the plaintiffs can recover, it must be satisfactorily shown that it has been performed. *Belfast & Moosehead L. R. R.* v. *Moore, sup.; Penob. & Ken. R. R. Co.* v. *Dunn,* 39 Maine, 588.

From the phraseology adopted there, it would seem that the defendant's subscription was made with the understanding that the road was to be located *via* Newport, although the language literally construed does not specifically so declare. Whether or not such a construction was really intended by the parties and should now be given, we will not now decide. The most favorable construction for the corporation, and the one which its counsel contends for, is that it has reference to the amount of subscription rather than to the route; and should be construed to mean, that no assessment should be made, until the full amount were secured for the completion of the road "as far as Newport is from Belfast" —but to some point of intersection with the "Maine Central Railroad." Some of the town-subscriptions contained the additional words, "or to any junction of the Maine Central."

As seen, the contract, independent of the charter, contains no express or implied promise to pay any sum whatever. The defendant can be holden only under his contract taken in connection with the charter. Section 5 of the charter authorizes "equal assessments from time to time on all the shares;" on non-payment after the prescribed notice, a sale of the shares at auction ; and if the shares sell for less than the assessments due thereon, "the delinquent subscriber or stockholder shall be held accountable to the corporation for the balance, with the interest and cost of sale."

Before the defendant can "be held accountable" under this provision of the charter, a legal assessment, notice, sale, and an ascertained balance must be proved. But by the express terms of the subscription as above construed, no assessment can be made against this defendant, "until the full amount be secured for the

completion of the road as far as Newport is from Belfast." Has such an amount been subscribed even ? The burden of establishing this very material fact is upon the plaintiffs. The case discloses no evidence to sustain it. On the contrary the evidence is full and undisputed that the road was not built to Newport, but to Burnham, and "$150,000 to $200,000 were saved by building to Burnham instead of Newport;" that the road to Burnham actually cost §950,000—more than the aggregate of all the subscriptions, valid, invalid and conditional, the latter sum being $935,700.

Moreover, taking the estimate of the engineer, (who located and under whose direction and supervision the road was built ; and which is the most favorable view in behalf of the plaintiffs that can be reasonably urged,) made and submitted to the board of directors before any assessments were voted, and rejecting the invalid and conditional subscriptions by the towns of Unity, Newport, Troy, and Detroit, and the plaintiffs signally fail.

[Engineer's estimate, (p. 7,)                                                           $906,500

Whole subscription, (p. 22,)                                      $935,700

Less Unity,                                      $30,000

"    Newport,                                    25,000

"    Troy,                                        10,000

"    Detroit,                                      5,000
                                                   ———        70,000
                                                                ———    865,700

Less than estimate,                                                       $40,800.]

The plaintiffs' further proposition that the directors were the judges whether or not a sufficient sum had been subscribed, is not a reasonable one, especially if by that is meant that they decided the estimate of their engineer was too high. It is the special province of the engineer to ascertain by preliminary surveys and otherwise the approximate cost ; and his report, although generally too low, is the foundation of ulterior proceedings. But no such absurdity is urged. Moreover, the proposition that the directors could bind the subscribers by deciding that the sum estimated by the engineer has been subscribed, is equally untenable. In the first place, there is no evidence in this case that any such decision was made, except the inference deduced from their vote to lay

assessments. There was nothing to exercise their judgment upon, except figures. To decide upon the pecuniary "responsibility" of individual subscribers, as used in the seventeenth by-law of this corporation, (as in *B. & M. L. R. R. Co.* v. *Brooks*, 60 Maine, 577,) the board of directors would be an appropriate tribunal, and as good as any; and good faith on their part in passing upon such a question, which is always one of much uncertainty, will bridge over any degree of *ignorantia facti*, or bad judgment short of actual fraud. But whether the aggregate amount of sundry subscription lists equals the sum estimated by the engineer is a simple mathematical question of easy solution, and not a matter requiring the judgment of a board of directors. The clerk testifies : "I footed up the amount of the subscriptions and reported the sum total to the directors. . . . I laid the sum total of the subscriptions before the directors before they acted." If this was all that was done in the premises, (and the evidence stops here on this point,) the directors took no note of the particulars, such as the names whether of individuals or towns, or whether conditional or absolute, hence did not profess to decide.

This "sum total" included the subscriptions of towns to the amount of $70,000. That these subscriptions were invalid is so free from doubt that the fact is admitted. Being invalid they could not be considered in the aggregate.

This being fatal to the maintenance of this action, we have no occasion to consider the numerous questions raised by the defendant. *Judgment for the defendant.*

APPLETON, C. J., DANFORTH, PETERS and LIBBEY, JJ., concurred.